May it please the court, my name is Jason Owens, I represent the appellants in this action, Washington County Sheriff Jay Cantrell and Washington County Jail Major Randall Denzer and Lieutenant Nolan Ake. This appeal is from the denial of qualified immunity on a summary judgment motion with respect to a case where the plaintiff, a prisoner, a former prisoner now at the Washington County Jail, alleged denial of his First Amendment rights related to the policies for books, newspapers and religious materials respectively at the jail. I'll begin, as Pearson v. Callahan and other cases allow, on the clearly established prong because I think it is the clearer of the prongs, honestly. Both the magistrate judge and the district court judge make the same citation for the clearly established law prong in this case, actually to a pending case in this court of which I have some familiarity having argued it again just a few months ago. But that case cites to two Supreme Court opinions from 2003 and 2006 respectively. Those cases are Beard v. Banks and Overton v. Bazzetta. In 2006 in the case of Beard and in 2003 in Overton. Those cases respectfully do not establish the law clearly, at least in the manner set out by the district court. Can I ask you about that? Sure. So those two cases talk about a complete ban on outside information, leaving aside the fact that I'm not even sure why the First Amendment applies as a matter of first principles because there's no speech. My understanding is the record shows that this particular inmate actually had, there's actual records showing that he had access to the tablets in the kiosk and actually used them. Am I understanding that correctly? Yes, that's correct. So how on earth could that be a complete ban? I'm trying to say, I don't even think there's a constitutional violation perhaps here because I don't understand if he had access and decided not to look at some of these periodicals and other such things. I don't understand how that's a complete ban. Well, not only did he have access, but he did look at them. In fact, his complaint was not of a ban, but in, for instance, with respect to books, he said that the tablets, the iPads that they got for their own use in the pod contained a quote, limited variety of books. Not that there was a ban, but that they didn't have all the genres that Barnes & Noble would supply. But the district court found several factual disputes here, right? I mean, I think if I read, and I know there were multiple orders here, so I may be confusing the magistrate judge and the district court, but my understanding is that there were repeated findings of factual disputes about whether or not there was a complete ban. Is that a fair reading of what the district court did? And if that's the case, how do we have jurisdiction to review that? Well, that's the fair and opening question, I think. The answer is by assuming everything in the non-moving party's favor. So our position in this appeal, and in this case, is that even if you assume all of those factual disputes in the appellee's favor, qualified immunity is still called for in this case. And we certainly have assumed all those facts in his favor, but those facts, even assumed in his favor, that quotation is a good example. So he says he had access to the tablets, but that they only contained a limited number of books. But the district court was, I'm sorry. No, go ahead. The district court was still found a factual dispute about that matter, didn't it? Only, yes. That's what I can't figure out, right? Because it's repeated in the order below, the 40-odd page order, I think, that came from the magistrate court, without citations to the record that I remember, but just this assertion that there are factual disputes about whether or not there was a complete ban. Yes, but then it goes on to say how it got there, right? And so the magistrate judge says, for instance, with respect to the religious materials, that access to religious materials similarly operates as a ban, says the magistrate judge, considering the limitations on inmates' access to the kiosk. In other words, this is a ban because they can't look at the kiosk 18 hours a day. They only get it for three hours a day and then have cooling off periods. I think that's what I was getting at, is isn't that blatantly contradicted by the record? So isn't this a Scott versus Harris situation? We don't have a video, but we have time spent on the iPads and the kiosk by this particular inmate showing it's not a complete ban. So how do you argue it's a complete ban if we have sort of uncontested time on these devices? That's absolutely correct. And particularly in light of the actual holdings in Overton and Beard, where they said, let me quote here from Overton, because I think this is important, quote, if faced with evidence that the regulation is treated as a de facto permanent ban on all visitation for certain inmates, we, quote, might reach a different conclusion. They didn't reach that different conclusion. In fact, they held that the restriction in that case was not a de facto ban and made the same holding in Beard. Did the district court or opposing counsel ever argue that those records showing his use of those devices was wrong or inaccurate? Has that ever been an issue in the case? Never. They simply argued both. The appellee, well actually all three, the appellee, the magistrate judge, and the district judge simply said that they could have and maybe should have had more options available, more subscriptions, different books, not that he didn't have access to these things. But that's not a complete ban is your argument? Absolutely not a complete ban, particularly when the complete ban jurisprudence is so ill defined. So Beard and Overton both say a de facto ban might be a constitutional violation, except these cases don't establish it. And when you look at the facts of Beard and Overton, they're significantly more severe than this. In Overton, for example, it was a ban on a plaintiff for all visitation for at least two years. At least two years. We're talking about an eight month period here. And they said that was not a de facto permanent ban because he might be able to get out of it at some point, even though the record stipulated that 75% of inmates in his position never get out of it and that they never visit with anyone for the rest of their lives if they have a life sentence. Counsel, you've correctly stated that we have to look at the facts in the light most favorable to the plaintiff. But I think maybe you're maybe glossing over a couple of them. One, he is confined to his cell all but one hour a day. And during that one hour, he may have 15 minutes of access to an electronic source of information. The district court also found that there are facts in the summary judgment record to suggest that Mr. Scharnhorst and other detainees cannot obtain access to any religious materials at all. So if we look at the facts in that light, how do we have jurisdiction? Given the factual discrepancy. Well, first of all, I don't think there would be any difference to the relative lack of time out of the cell, whether it's a hard copy or digital. So if you only get one hour out of your cell, you have access only for that one hour, regardless of whether it was digital or hard copy. The undisputed record establishes that, A, he testified, the appellee testified, that he got access to the book cart, and his complaint was that it only contained the Bible and religious materials. Well, there's definitely a dispute in the record as to whether there even is a book cart. No, that's not accurate, Your Honor. Respectfully, let me say this. There's a dispute in the record about how frequently he got it. He says in several places, his testimony is that he rarely saw it, and it didn't come around very often. And when it did, it didn't have books, but only had religious materials. Also in appendix about 200 to 500, we lay out all of his kiosk activity. So he's obviously, if there are 300 pages of kiosk activity, he's on the kiosk. And some of that includes back and forth with clergy about religious materials, including provision of religious materials. It's also undisputed that the Bible, and I believe other religious materials, were on the tablet that he had access to. That's undisputed, that the Bible was on there. And for a Christian, access to the Bible is a lot of things. It's not a ban. It's certainly not a de facto ban. Leaving out the religious stuff for just a minute, I'm just trying to figure out, on the complete ban point, the emails. That's what I was going to get at. They're allowed to do two emails a day, I believe. I'm trying to figure out, those cases that you cite from the Supreme Court talk about being cut off from the outside world. That's what they talk about. They don't talk about having an unlimited, they don't get a library of whatever magazines or newspapers they want. And I'm just wondering if the access to emails plays a role as to those two Supreme Court cases. And again, leaving aside religious materials, because I think that's an entirely different category. Well, it's easy to use, and I think sometimes misused, language from cases. So the quotation from the case is, de facto permanent ban, which begs the question, ban on what? And you're exactly right. The Supreme Court says it's a ban on communication with the outside world. We've got 300 or 400 pages of his communications with the outside world. There's absolutely no de facto ban or any other kind of ban with respect to any of that. Newspapers are another good example that there was no de facto ban. The plaintiff himself says, in the eight months that we're talking about here, the newspaper was only not uploaded, according to him, on nine days. Counsel, let me ask about that. Your brief focuses on the newspaper aspect of this. Don't we need to separate it into books, religious materials, and newspapers for purposes of our analysis? I don't think so under Overton and Beard, because again, Overton and Beard... Well, Overton and Beard, if the clearly established law is, as the magistrate judge and the district judge cite, that you can't have a de facto permanent ban, again, it does beg that question, of what? Well, let's say religious materials. Of what? The cases say, the ability to read. It's okay to deny access to all religious materials as long as they get a newspaper. That's not clearly established. I think religion is separate, because I think it's a separate... Are we going to conduct three separate analyses? Well, as Judge Trost said, religion has its own font in the First Amendment. We have a right to free exercise of religion. You don't have a separate right. You have a right to speech, although some of the cases have said there's a right to read, a right to hear other people speak in certain ways. But I think religion would have its own separate font under the First Amendment. The record seems to be much more fully developed here as to newspapers, and there seems to be issues of material fact as to the other two categories. I don't think that's accurate, Your Honor. With respect to... If I may, just briefly, I don't want to get too far into my rebuttal time, but with respect to religious materials, it is undisputed that the plaintiff had access to a Bible. With respect to books, it is undisputed that he had access to books on the kiosk. He said it was not a great variety of books. It was a limited... That was his quotation, limited variety of books on the kiosk. The religious materials are undisputed that there were Bibles on the book cart and in the kiosk and in the tablet. What if there were a thousand books on the kiosk, but he didn't have access to it? Well, that would be a different case. Would that be an available alternative? If he was completely denied, it might not be. But then you get into the permanency question of Overton and Beard. How long is too long? Those cases say two years is not too long. That's what those cases say. If we're talking about that as the hallmark for clearly established law. I'll stop there and leave my last minute for everybody. Thank you, Your Honor. Mr. Solomon. Good morning. May it please the Court. Danny Solomon for John Scharnhurst. This Court should affirm for two reasons. First, this Court lacks jurisdiction over the appeal. The officers don't appeal the purely legal question of whether Scharnhurst's facts establish a clearly established right. Instead, they protest that the facts are undisputed in their favor and ask this Court to analyze qualified immunity based on their version of the facts. Second, this Court should affirm on the merits. When taking the facts in a light most favorable to Scharnhurst, the policies at the jail operate as a de facto ban on books, religious materials, and the newspapers, which violate the terms and conditions of the statute. Help me with that. A de facto ban, except that he accessed. So help me with that, right? I mean, that's where I'm at. Isn't that factual dispute clearly contradicted by the record, and why isn't that true? So the starting point here is the jail's policies, which they don't identify in the brief. And let's start with books. So for books, they are allowed to keep three books in their cell, but in practice, they're not allowed to order books from publishers. They can't bring in books from family and friends. And so that's the policy. It's a ban on receiving books. And so the question is, is the kiosk tablet system an available alternative under Turner such that the ban on receiving books from the outside, publishers, family, and friends, that he requested and was denied, is constitutional? Now there's a case that was cited in the Human Rights Detention Center v. Baxter County. It's from the Ninth Circuit called Crime, Justice, and America v. Honea, where they analyzed this properly. And they asked, is the kiosk tablet system there an available alternative such that he could exercise his First Amendment right? So here there's material fact disputes as to whether the kiosk tablet system is an available alternative. Except that we know he accessed them, right? Or is it we don't know what he did on there when he was on there? Or do you dispute the fact that he accessed those? So I understand that they submitted this log of 300 pages. They don't explain how to interpret the log. I mean, oftentimes when he was submitting grievances on the kiosk, he was complaining that he couldn't access the newspaper. The kiosk has no books. As the tablets, he said, there is an extremely limited variety of books. Is there evidence in the record that he did access the tablets, though? Yes. According to these logs, we calculated that in an eight-month period, he was only able to access the tablets 40% of the time, as just Grass pointed out. It was only for 15 minutes a day because he was only out of the cell for an hour at a time. So what case clearly establishes that, assuming those facts, that that's a violation, a clearly established violation? So, well, you have to resolve material fact disputes in his favor. So the district court and the management judge found that it doesn't amount to an available alternative because of the limitations on access, the fact that there were basically no books on the tablet. So you may have a violation there, right? But don't you still, when the defense of qualified immunity raised, don't you still have to go through the clearly established and find a case that says, look, 40% hypothetically isn't enough? Well, as Judge Grass noted in the Banks v. Hawkins case, you don't have to have a case with exactly the same facts. Right. But which one is it that comes closest? Is it the Beard and Overton? So I think there's a couple ways to get there. This court has been clear that a ban on materials is unconstitutional. There's a case which we didn't send in our brief called Murchison v. Rogers, which noted that a ban on the Newsweek magazine would be unconstitutional. And this court noted in Human Rights Attention Center and the Beard that bans are problematic. And so when you take that line of cases, and there's another line of cases in the Cotton v. Lockhart and Delvers v. Wolffish and Jones v. Salt Lake City, which held that policies limiting the source of materials are unconstitutional or constitutional only when there's other sources available. And so here, he can't order from publishers. The book cart basically doesn't function, it doesn't travel around, there's no books on it. He can't have family and friends. And so basically his access to books is 15 minutes a day when he can access it 40% of the time and with an extreme limit of variety. So he basically has no books. You know, I agree with everything you're saying, but I still don't think there's a genuine issue of material fact. I mean, the problem is those records, right? I don't care if he was, you know, playing Angry Birds, you know, or whatever he was doing. He had access. It seems to me that if you show the logs, he undoubtedly had access to whatever limited amount of things were on there. So it just cannot amount to a complete ban. Now, you may want more. You may want, instead of 15 minutes, you may want an hour. You may want two hours. But it's not a complete ban. Well, there is a complete ban on, the policies themselves are complete bans. The policy is you can't order from publishers, you can't have family and friends. On that, I agree with that, but there's an alternative, which is to go on the tablets. But is that an available alternative? I think that's what the court found. We can't decide based on this record that it is an available alternative such that it satisfies the First Amendment analysis. But that gets their records. I think it's blatantly, unless there's some problem with the records, they're not authenticated, there's no foundation. There's, as you said, there's 300 pages of records showing that he, or that somehow they were taken off the tablets, like the books and the newspapers were taken off the tablets. I don't see how we can say that's a complete ban if there's 300 times that he, or 300 pages of times that he accessed it. Well, the kiosks separate the kiosks and the tablets, because a lot of the access was to the kiosk and calculated. He could only, again, he could only access the tablet 40% of the time, and that was 15 minutes a day. So in essential, and there's no record as to what the titles of the books were, and we're just focusing on books here. But there's no record of the title of the books on the tablet. And so that is, I don't see that as an available alternative to the ban on outside, on ordering outside books. But isn't that a legal question, then, at that point, and not a question of fact? Is 15 minutes per day a complete ban? That seems to me to be an entirely legal question that we can decide, no matter what the underlying facts are. But again, I think that's framing it like the plaintiff's version. The question is not, does he have a First Amendment right to hard copies of materials? It's, does he have a First Amendment right to access books? And again, the Ninth Circuit case, and they analyzed this, they asked whether it's an available alternative. And so that fits into the Turner analysis. You can't just ask, is it a ban because he could access it 15 minutes a day? It's whether it clears the constitutional threshold under Turner as an available alternative to the jail's policies, their stated policies, which ban the materials. Can I ask you about the kiosk real quickly? I thought that they loaded the newspapers on the kiosk. Now, there's questions about eight times or something over, or maybe there was 20, I can't remember. But there were times when they didn't load it. 27. 27 times they didn't access it. Yeah. I wasn't trying to minimize. I just couldn't remember. Were they available? Was that the only reading material of newspapers, books, and religious materials that was actually available on the kiosk? Or is it undisputed there were other things available on the kiosk as well? So I think the only thing available on the kiosk, well, the clergy could post religious materials through their, I guess, some chat function. But in terms of material, I think the newspaper was the only thing available on the kiosk. The tablet had, I think, a copy of a Bible and an extremely limited variety of books. But that's how he was accessing the newspaper. I'd like to go back to the jurisdictional issue and dig down into that a little bit more. I guess my question is, are we able to conduct a full Turner analysis on this record given the factual findings of the district court? And I think you're saying no, but why not? What are the findings of the district court that would preclude us from conducting a full Turner analysis? So this court could have conducted a full Turner analysis had the officers raised a purely legal question. And what they should have done is taken the facts in the light most favorable to Scharnhurst and argued that under those facts, a clearly established violation wasn't stated. Right. So what factual findings of the district court are different than what Sheriff Cantrell is arguing? So I think if you read the briefs, the facts that we state in our facts section are the facts in the light most favorable to Scharnhurst. And those facts are nowhere in their brief. If you read their opening brief, you would have no idea what the real factual record is because they basically take their version of the facts and argue it's undisputed, it's undisputed, it's undisputed. But those are contrary to what the district court found and they found material fact disputes across the board. Okay. Could you go through some of those? Sure. I mean, so just as we've been talking on books, that he does not have access to a book cart, there are no books on the book cart, it comes around basically once in a blue moon to the point where there was jail officers who didn't know there was a book cart. The fact that he's on the kiosk and tablet, that his access was limited to 45 minutes a day for, or 30 minutes a day for the kiosk and the tablet, and that even when he could access it, the newspaper often wasn't uploaded. What about access to religious materials? It seems to me there were findings by the district court that put into question whether there was any access at all. Yeah. Okay. So for the religious materials, there's first the material fact dispute as to what the correct policy is. The jail, the written handbook states that he is not, the clergy cannot deliver written materials to inmates. And then Captain Ake testified that they can and that that's the only way that they can get religious materials. And so Sharnhurst wanted a copy of the King James Bible and some other Christian materials, which he was not able to access. And there's some record evidence that he was at one time given some Christian publications, but those were after the time period where, after the complaint was filed. And so during the six, seven month period, he was continuing to request the religious materials and he was denied those. He did not obtain a copy of the King James Bible and he was consistently essentially denied access to those materials. And then as for the newspapers, I think there's a material fact dispute as to whether the kiosks and the tablets, whether they amount to, like the context of the deprivations, how often it occurred. I mean, his affidavit, which is one of the pieces of evidence that the district court considered, stated that it was at least that many times. But he was given access to newspapers on a regular basis other than maybe a few, maybe That's undisputed, isn't it? Well, it was about, it was at least 27 times. And there was a preliminary injunction entered against the jail for not providing the newspaper. And they were ordered to provide him with a physical copy of the newspaper, which is what he really wanted. And that's the ban. The ban's on the physical copy of the newspaper. And the question is, is the kiosk tablet system in available? Is there any precedent saying that a jail can't go to a paperless system? No, I don't think there's anything wrong with the kiosk tablet system. If it provided a reasonable access to inmates, that means that there was a lot of kiosks for inmates and they had more than 15 minutes of access at a time, 30 minutes of access at a time, that would be fine. And if the tablet had a full library of books, and we're not talking about Barnes & Noble here, but it needs to have more than an extremely limited variety of books that he can access for 15 minutes a day. And so based on all these facts, what they should have done for this court is given the facts in Charter's favor that this court can then analyze and say, based on these facts, we don't find a clearly established right. But they didn't do that. I mean, you can't look, you can't understand the record from their brief. And as this court has done many, many times, they need to raise a purely legal question. They can't just dress up off an immunity appeal and say it's undisputed. One thing that really concerns me about cases like this one is federal courts intervening and trying to run prisons. It's not our job to run prisons. And so you just talked about the injunction saying you have to give a physical newspaper. Well, that's kind of like running the prison, really. And so what I'm worried about is federal judges coming in and saying, OK, you've got to provide the newspaper, and you've got to provide a physical copy of the King James Bible, and not this kind of Bible. And you've got to provide a physical copy of this, and you need to buy 20 more tablets because of the inmate. That's what worries me about venturing in this area. But I want to give you a chance to respond because it's an important case. I get that concern. I mean, as the Beard case, the Supreme Court made clear that the Turner test should not make it impossible to find that a jail policy is unreasonable. And so I understand that we don't want to be intruding on jail administration because it is difficult, and they're making difficult decisions. But at some point, there's a line where it's like, it's not fair. I mean, this guy was in a cell for 23 hours a day, and he literally couldn't access books. I mean, he was supposed to be able to access three books a day. There's tons of cases where courts upheld publisher-only rules because that's reasonable. There has to be some access here. And I understand, I get the concern about not intruding, but at some point, the court has to intrude because he requested over and over and over again, I can't access the newspaper today. Like, where's the newspaper? I mean, part of the problem was with the newspaper that even though he could access the kiosk, that the problem was that this index was mislabeled. And so he might spend 20 minutes of his 30 minutes just searching for the daily newspaper because it wasn't clearly labeled. And so at some point, it is this court's job to intervene and say, something's got to change. So just on the, I just want to touch one thing on the clearly established problem for newspapers. I mean, there might not be a case in the Eighth Circuit, but there's a robust consensus of persuasive authority, which has held that essentially denying inmates the right to access the news violates the First Amendment. And there's the Mann case from the Fifth Circuit, Thomas in the Tenth Circuit, even in Rolland v. Jones, which was many, many years ago in this court, a prisoner was denied the Muhammad Speaks newspaper. And so I think this court could find that if it does amount to a de facto ban based on his access to the kiosk and tablets, that it was clearly established. We ask this court to affirm. Thank you. How much time is left for rebuttal? One minute and 15 seconds, Your Honor. Couldn't you set up for two minutes, please? Thank you, Your Honor. With respect to the facts, I would certainly invite this court to draw all facts in favor of the appellee. I think that's what's supposed to happen in these cases, and I would invite the court to do that. With respect to qualified immunity, there's a couple of interesting notes here that I think don't stand out. Qualified immunity, of course, is all about the reasonable notice to public officials and employees that their conduct is illegal. And so in addition to the normal considerations that these public employees or officials would have to deal with, being a layperson, trying to read judicial opinions, and that's why the Supreme Court, of course, has said the parameters have to be sufficiently clear and particularized, not these broad, general things, which, frankly, is the Turner test, this broad, general test. But a couple of things that factor in here that are really difficult in terms of reasonable notice. One is judicial deference. As Judge Strauss noted, the courts have long held that judicial deference owes to jail administrators. Here, I find it impossible for a reasonable official to know, particularly in light of the judicial deference that the federal courts promised, that making these attempts at providing materials in a host of ways, through a book cart, through a kiosk, through a tablet, through direct communication with chaplains, all of these ways, not to mention visitation, telephone video, et cetera, that there would be this issue. I think the other point, for qualified immunity purposes, is that all of the cases cited here by the appellees, the district court, are from the prison system, not the county jail system. That's really important when you're talking about de facto permanent bans because permanency is much more pronounced in prison systems rather than in jails where the average stays are weeks or months. For those reasons, we would ask that the district court be reversed in qualified immunity. Thank you. Thank you, counsel. The case is submitted and we will take it under advisement.